UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA DENNING,<br><br>            Plaintiff,<br><br>     v.<br><br>BRIGHAM AND WOMEN'S HOSPITAL, INC.,<br><br>            Defendant. | Case No. 1:24-cv-12980-JEK |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### I.      Introduction

Defendant, Brigham and Women's Hospital, Inc. ("Defendant" or "BWH"), operates a world-renowned hospital as part of a premier healthcare system that implemented a COVID-19 vaccination requirement for its staff during the height of the global pandemic (the "Vaccination Policy"). Plaintiff, a former BWH employee, asserts three causes of action arising from the denial of her request for a religious exemption from the Vaccination Policy and her subsequent termination for failure to comply. All three claims suffer from fatal procedural and substantive defects requiring dismissal.

*First*, Plaintiff's failure to accommodate claims under Title VII (Count I) and M.G.L. c. 151B ("Chapter 151B") (Count II) are barred for failure to exhaust administrative remedies and on statute of limitations grounds, respectively. As for the Title VII claim, Plaintiff does not allege that she received a Notice of Right to Sue ("NORS") from the EEOC before filing this action, and BWH is aware of no evidence suggesting that she did. A Title VII claim filed before a plaintiff obtains a NORS from the EEOC is not exhausted, and thus is barred from proceeding in federal court. Plaintiff's Chapter 151B claim is time barred as a matter of law. The c. 151B cause of

action accrued on the date her religious exemption request was denied—September 13, 2021. *See* **EXHIBIT A** (E-mail Correspondence Denying Plaintiff's Religious Exemption Request). Pursuant to G.L. c. 151B, § 9, Plaintiff was required to file a civil action no more than three years later, on or before September 13, 2024. Plaintiff did not file the instant action, however, until November 11, 2024. Her Chapter 151B claim is therefore time-barred.

*Second*, even if Counts I and II were not barred, the Complaint fails to allege even rudimentary facts to support a claim for religious discrimination under Title VII or Chapter 151B. In particular, the Complaint fails to identify any specific religious belief or practice of Plaintiff *at all*, let alone a *bona fide* religious belief or practice that conflicted with the Vaccination Policy. The lack of any allegations describing Plaintiff's religious beliefs or practices—or why they conflicted with the Vaccination Requirement—is fatal to Plaintiff's failure to accommodate claims and requires dismissal of Counts I and II.

*Third*, Count III, a purported claim for intentional infliction of emotional distress ("IIED"), fails as a matter of law for two reasons. First, it is well-established that common law tort claims arising from personal injuries suffered in the course of employment, including claims for intentional infliction of emotional distress, are barred by the exclusivity provision of the Commonwealth's Workers' Compensation Act (the "WCA"). Second, even if that were not so, the Complaint's threadbare, conclusory allegations do not describe any conduct that would come close to establishing a right to recovery under an IIED theory. The sole alleged basis for Plaintiff's IIED claim is her conclusory assertion that BWH violated her rights under Title VII and Chapter 151B when it denied her religious exemption request. *See* Compl., ECF No. 12 at 12, ¶¶ 25-27. The Complaint, though, lacks any facts suggesting that BWH engaged in any conduct toward Plaintiff that would even begin to approach the very high standard courts apply to IIED claims—

315581744v.2

*viz.*, conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987).  Plaintiff's subjective disagreement with her former employer's decision regarding her religious exemption request, or with the termination of her employment for non-compliance with its vaccination requirement in the middle of a global pandemic, does not suffice to state an IIED claim under Massachusetts law. Thus, even if Count III were not precluded by the WCA exclusivity provision (which it is), it is still subject to dismissal because the Complaint alleges no facts to support it.

For these reasons, and those set forth below, BWH respectfully requests that this Court grant its Motion to Dismiss.

## II.     Factual and Procedural Background

The Complaint alleges that Plaintiff was employed by BWH from 2014 to 2021 and for a period before 2014.  Compl., ECF No. 12 at 9, ¶ 4.[1]  In 2021, Plaintiff sought a religious exemption from the Vaccination Policy.  Compl., ECF No. 12 at 10, ¶ 5.  The Complaint does not identify or describe Plaintiff's religious beliefs or practices, or how they conflicted with the Vaccination Policy.  On September 13, 2021, Plaintiff's religious exemption request was denied.  Compl., ECF No. 12 at 10, ¶ 7; Ex. A.[2]  Plaintiff was subsequently terminated for failing to comply with the Vaccination Policy.  *Id.*, ¶ 8.

---

[1] In reciting the facts alleged in the Complaint, BWH does not concede their veracity, and expressly reserves the right to further respond to the allegations should any part of this action proceed beyond the pleading stage.

[2] This Court may consider Exhibit A, a true and accurate copy of the e-mail Plaintiff received communicating the denial of her religious exemption request, because the denial is referenced in the Complaint and Plaintiff's failure to accommodate claims necessarily rely upon it.  *See*, *e.g.*, *Ironshore Specialty Ins. Co. v. United States,* 871 F.3d 131, 135 (1st Cir. 2017) (on Rule 12(b)(6) motion, courts may consider, *inter alia*, "documents central to plaintiffs' claim[,]" documents "sufficiently referred to in the complaint[,]" and may consider a document where "a complaint's

Plaintiff filed a Charge of Discrimination with the MCAD, which was dual-filed with the EEOC. *Id.*, ¶ 9. On October 29, 2024, Plaintiff withdrew her complaint from the MCAD in order to file a civil action in court. *Id.*, ¶ 10. Plaintiff filed this action in Middlesex Superior Court on November 11, 2024. *See* ECF No. 12. The Complaint does not allege that Plaintiff received a NORS before filing this action.

BWH removed the action to this Court on December 3, 2024. *See* ECF No. 1.

### III. Argument

#### A. Legal Standard.

To survive a Rule 12(b)(6) motion, the complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the Court can reasonably infer that the defendant is liable for the misconduct alleged. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). "Plausible, of course, means something more than merely possible[.]" *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (internal quotation marks omitted). "Dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotation marks and citations omitted).

In evaluating a motion to dismiss, the Court may consider, in addition to the complaint, "documents the authenticity of which are not disputed by the parties[,]" documents "central to

---

factual allegations are expressly linked to—and admittedly dependent upon" it) (internal quotation marks and citations omitted); *Griffin v. Massachusetts Dep't of Revenue*, No. 22-CV-11991-FDS, 2023 WL 4685942, at *1 (D. Mass. July 20, 2023) (in Title VII case challenging termination for refusal to comply with employer's vaccination policy, considering "[the employer's] denial of [the plaintiff's] request" on Rule 12(b)(6) motion), citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

315581744v.2

plaintiffs' claim[,]" and "documents sufficiently referred to in the complaint." *Watterson*, 987 F.2d at 3; *supra* at note 2.

Affirmative defenses, such as the statute of limitations, may also be adjudicated on a Rule 12(b)(6) motion. *See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) ("Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)[.]"); *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998) (motions to dismiss are "entirely appropriate" vehicle for evaluating statute of limitations defense). *See Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 117-21 (1st Cir. 2009) (affirming Rule 12 dismissal of complaint, and denial of leave to amend, where plaintiff failed to file Title VII complaint within 90 days of receiving EEOC right-to-sue letter and Chapter 151B claim was barred by three-year statute of limitations).

In evaluating an affirmative defense in the context of a Rule 12 motion, the Court may likewise consider "the complaint, together with any other documents appropriately considered under Fed. R. Civ. P. 12(b)(6)[.]" *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001); *see also*, *e.g.*, *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003) (facts establishing affirmative defense must be "ascertainable from the allegations of the complaint, the documents … incorporated therein, matters of public record, and other matters of which the court may take judicial notice").

    **B. Plaintiff's Title VII and Chapter 151B Claims Must Be Dismissed Because These Claims are Unexhausted and Time-Barred, Respectively.**

        **i. Plaintiff's Title VII Must Be Dismissed for Failure to Exhaust Administrative Remedies.**

In the instant case, Plaintiff filed a charge of discrimination with the MCAD, which was then transmitted for dual filing with the EEOC. *See* Compl., ¶ 9. Although the Complaint alleges

that Plaintiff obtained the *MCAD*'s authorization to withdraw the charge and file a civil action under Chapter 151B, *see* Compl., ¶¶ 9, 10, Plaintiff does not allege that she obtained a NORS from the *EEOC* before bringing this action alleging a Title VII claim. Receipt of a NORS from the EEOC, however, is a statutory prerequisite to bringing a Title VII claim in court; without it, the claim is not exhausted and is barred from proceeding. Consequently, Plaintiff's Title VII claim must be dismissed for failure to exhaust administrative remedies.

The First Circuit has repeatedly held that "a federal court will not entertain employment discrimination claims brought under Title VII unless administrative remedies have first been exhausted." *Rodriguez v. United States*, 852 F.3d 67, 78 (1st Cir. 2017) (*citing Fantini v. Salem State Coll.*, 557 F. 3d 22, 26 (1st Cir. 2009)). The "unexcused failure to exhaust administrative remedies effectively bars the courthouse door" for a Title VII claim. *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005). In order to exhaust administrative remedies under Title VII and thereby, in turn, be permitted to file suit, "the employee *must wait* for what is known as a right-to-sue letter." *Abraham*, 553 F.3d at 119 (emphasis added).

Only *after* receiving the right-to-sue letter may the employee proceed to file a lawsuit under federal law in court (and she has 90 days to do so). *Id.*; *Franceschi v. U.S. Dep't of Veterans Affs.*, 514 F.3d 81, 85 (1st Cir. 2008) ("Administrative remedies could not be considered to have been exhausted, however, until the EEOC issued [the plaintiff] a right-to-sue letter. See 42 U.S.C. § 2000e–5(f)(1)."); *Goldstein v. Brigham & Women's Faulkner Hosp., Inc.*, 80 F. Supp. 3d 317, 323 (D. Mass. 2015) ("Under Title VII, a plaintiff cannot file a federal claim until she has received a notice of right-to-sue from the EEOC[.]"). In sum, "[a] Title VII claim filed before a plaintiff obtains a right-to-sue notice from the EEOC is not exhausted, and so is barred from proceeding in

315581744v.2

federal court." *Ngomba v. Olee*, No. CV 18-11352-MPK, 2019 WL 1119588, at *3 (D. Mass. Mar. 11, 2019) (citing cases).

That the charge was dual-filed with the MCAD and EEOC, or that the MCAD authorized the withdrawal of Plaintiff's state agency charge, are irrelevant to the question of exhaustion under Title VII. To the contrary, "a plaintiff seeking to bring a Title VII claim in federal court must obtain a right-to-sue letter from the EEOC, *even if* the underlying complaint was filed initially with the MCAD … and then filed with the EEOC under a work sharing agreement, and *even if* the MCAD has issued its own right-to-sue letter." *Taite v. Bridgewater State Univ.*, 236 F. Supp. 3d 466, 477 (D. Mass. 2017) (emphases added).

Accordingly, where, as here, "[Plaintiff] has not alleged that [s]he has received a right-to-sue letter issued by the EEOC[,]" Plaintiff's Title VII claim should be dismissed for failure to comply with the administrative prerequisites to suit. *Ngomba*, 2019 WL 1119588, at *3.

### ii.    Plaintiff's Chapter 151B Claim is Time-Barred.

Plaintiff's failure to accommodate claim under Chapter 151B (Count II) must be dismissed because it is time-barred. "The law is well settled that a civil action under 151B must be filed within three years of the alleged unlawful act … The proper focus for determining when a statute of limitations period commences is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Abraham*, 553 F.3d at 117 (internal alterations, quotation marks, and citations omitted); G.L. c. 151B, § 9 ("Any person claiming to be aggrieved by a practice made unlawful under this chapter … may, … not later than three years after the alleged unlawful practice occurred, bring a civil action … .").

To determine when a cause of action for failure to provide a reasonable accommodation under Chapter 151B accrues for statute of limitations purposes, Massachusetts appellate courts

look to federal decisional law addressing the analogous issue of timeliness under federal anti-discrimination statutes. *See*, *e.g.*, *Adamczyk v. Augat, Inc.*, 52 Mass. App. Ct. 717, 720-24 (2001) (looking to federal case law to construe timeliness of plaintiff's Chapter 151B claim); *Adamczyk*, 52 Mass. App. Ct. at 720 ("We commonly apply Federal law construing Federal antidiscrimination statutes in interpreting G.L. c. 151B.").

Both the Supreme Judicial Court and a number of federal appellate courts, including the First Circuit, have held that an employer's denial of an employee's accommodation request is a discrete act that immediately starts the clock on the limitations period under Massachusetts and federal anti-discrimination laws, and to which the continuing violation doctrine does not apply. *See Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination*, 441 Mass. 632, 645 (2004) (concluding that continuing violation doctrine does not apply to failure to accommodate claims, and holding that "[w]hen an employer refuses an employee's request for a reasonable accommodation, *the refusal* is a discrete discriminatory act triggering the statutory limitations period") (emphasis added); *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015) ("we have held that the denial of a reasonable accommodation … constitute[s] [a] discrete act[]"); *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009) (holding, under the ADA, that an employer's denial of employee's requested accommodation "is a discrete discriminatory act triggering the statutory limitations period") (internal quotation marks and citation omitted); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003) (holding that "an employer's rejection of an employee's proposed accommodation for religious practices" is a "single completed action when taken" and, as such, is a "discrete act" that starts the statutory filing clock); *Cherosky v. Henderson*, 330 F.3d 1243, 1247-48 (9th Cir. 2003) (agreeing with *Elmenayer* and holding that each denial of employees' requested accommodations constituted discrete acts

8

315581744v.2

under the Rehabilitation act); *Sloan v. City of Pittsburgh*, 110 F. App'x 207, 210 n.4 (3d Cir. 2004) (noting, in assessing timeliness of Title VII claim, that "[t]he rejection of a proposed accommodation is a single completed action when taken") (*quoting Elmenayer* at 135).

This Court has also reached that conclusion in multiple cases involving failure to accommodate religion claims under both Title VII and Chapter 151B. *See Mekonnen v. OTG Mgmt., LLC*, 394 F. Supp. 3d 134, 157–58 (D. Mass. 2019) (holding Title VII and Chapter 151B religious failure to accommodate claims time-barred to the extent predicated on denied requests that were outside of limitations period; "the denial of a request for accommodation is a discrete discriminatory act triggering the statutory limitations period") (internal citations and quotation marks omitted); *O'Brien v. City of Springfield*, 319 F. Supp. 2d 90, 100 (D. Mass. 2003) ("[t]he Court therefore concludes that each denial of [the plaintiff's] request for religious accommodation constitutes a discrete, allegedly discrimination act") (*citing and quoting Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Under the Supreme Court's seminal case addressing the limitations period in Title VII cases, *Morgan*, "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. … The charge, therefore, must be filed within the [applicable] time period after the discrete discriminatory act occurred." *Morgan*, 536 U.S. at 113. Moreover, as the Supreme Court explained in *Morgan*, a plaintiff cannot "use a termination that fell within the limitations period to pull in the time-barred discriminatory act." *Morgan*, 536 U.S. at 113; *see also Ayala v. Shinseki*, 780 F.3d 52, 59 (1st Cir. 2015) ("Title VII was triggered

9

upon the *initial occurrence of the adverse employment actions*, even if their effects continued to be felt for as long as [the plaintiff] remained employed.") (emphasis added).[3]

Application of this robust body of case law, including *Morgan* and its progeny, to the undisputed timeline in this case demonstrates that Plaintiff's failure to accommodate[4] claim under Chapter 151B is time-barred. The relevant adverse employment action with respect to this claim was the denial of Plaintiff's requested exemption from the Vaccination Policy. *See*, *e.g.*, Compl., ¶¶5-7 (alleging that Plaintiff submitted a religious exemption request and that this request was denied). There is no dispute that the denial of Plaintiff's religious exemption request was communicated to her on September 13, 2021. *See* Ex. A.

Accordingly, for Plaintiff's failure to accommodate claim to be timely under Chapter 151B's three-year statute of limitations, Plaintiff was required to file any lawsuit asserting that

---

[3] The Supreme Court's holding in *Morgan* applies to the accrual analysis under Chapter 151B. *See Morrison v. N. Essex Cmty. Coll.*, 56 Mass. App. Ct. 784, 794-95 (2002) (*quoting Morgan*, 536 U.S. at 153, in setting forth distinction between discrete acts and continuing violations under Massachusetts anti-discrimination laws and explaining that Chapter 151B claim premised on discrete act accrues "from the date of [the] act").

[4] Although the Complaint is somewhat unclear in articulating the theory of discrimination asserted under Chapter 151B, the only specific allegations of allegedly unlawful conduct relate to the denial of Plaintiff's religious exemption request, and the Complaint contains no allegations independently supporting any other theory of religious discrimination. *See*, *e.g.*, *Zerveskes v. Wentworth-Douglass Hosp.*, No. 24-CV-025-SE-TSM, 2024 WL 4301375, at *4 (D.N.H. Sept. 26, 2024) (in case asserting Title VII and state law religious discrimination claims relating to employer's COVID vaccination policy, dismissing duplicative discrimination claim where "[Plaintiff] fails to offer a theory of relief for [the claim] based on her suspension and termination that is not duplicative of her religious discrimination claim based on failure to accommodate"); *Caspersen v. W. Union, LLC*, No. 23-CV-00923, 2023 WL 6602123, at *11 (D. Colo. Oct. 10, 2023) (dismissing Title VII religious discrimination claim based on "wrongful termination" because the plaintiff failed to plead facts to support a claim "separate from his claim based on a failure to accommodate"). Here, as in *Zerveskes* and *Caspersen*, Plaintiff "does not allege, for example, that colleagues of different religions or of no religion similarly declined to comply with the vaccination requirement and were permitted to keep their jobs, or that [s]he or [her] protected class were singled out with respect to the vaccination requirement." *Caspersen*, 2023 WL 6602123, at *11.

10

claim on or before September 13, 2024. *See* G.L. c. 151B, § 9; *Abraham*, 553 F.3d at 117. Plaintiff did not file the instant action, however, until November 11, 2024. The failure to accommodate claim is therefore time-barred, irrespective of whether the subsequent separation of Plaintiff's employment occurred within the limitations period. *See Morgan*, 36 U.S. at 113 (plaintiffs cannot "use a termination that fell within the limitations period to pull in the time-barred discriminatory act").

At least one federal court recently reached this precise conclusion in a case in which employees brought ADA and Title VII claims challenging their former employer's denials of their medical and religious exemption requests from a COVID-19 vaccination policy. *See Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652 (N.D. Tex. 2023). In *Sambrano*, the court held that a plaintiff's Title VII failure to accommodate claim was time-barred because the date of the denial of her exemption request was outside of the limitations period. *Sambrano*, 707 F. Supp. 3d at 672-74. The employee sought to argue that her failure to accommodate claim was not time-barred because her termination had occurred within the limitations period, and the denial of her accommodation request was merely "the first step in a continuous process, culminating in her termination." *Id.* at 674 (internal quotation marks omitted). The court rejected the argument and held the failure to accommodate claim time-barred, applying *Morgan* to hold that the continuing violation doctrine had no application to the employer's denial of the employee's religious exemption request: "[A]n employer's failure to provide accommodations is a discrete act that does not qualify under the continuing violation doctrine. … Accordingly, [the employer's] denial of [plaintiff's] accommodation request was not a continuing violation, it was a discrete act." *Id.* (*citing*, *inter alia*, *Morgan*, 536 U.S. at 113).

So it is here. Regardless of whether the separation of Plaintiff's employment occurred within the three-year limitations period under Chapter 151B, the underlying denial of Plaintiff's religious exemption request did not, and Plaintiff's failure to accommodate claim is time-barred. *See Ocean Spray Cranberries*, 441 Mass. at 641-45; *Morrison*, 56 Mass. App. Ct. at 794-95. Accordingly, this claim must be dismissed.

### C. The Complaint Fails to State a Claim for Failure to Accommodate.

Even if Plaintiff's Title VII and Chapter 151B claims were not procedurally barred, which they are, they would still be subject to dismissal because the Complaint alleges no facts plausibly suggesting an entitlement to relief. *Twombly*, 550 U.S. at 557. In particular, the Complaint fails to identify any religious belief or practice of Plaintiff at all, let alone a *bona fide* religious belief or practice conflicting with the Vaccination Policy.

"The First Circuit applies a two-part framework to analyze religious discrimination claims under Title VII: First, the plaintiff must make her prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action.... If the plaintiff establishes her prima facie case, the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." *Robert v. Raytheon Tech. Corp.*, 731 F. Supp. 3d 198, 204 (D. Mass. 2024) (*quoting Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004)) (internal quotation marks omitted). "The framework for evaluating religious discrimination claims under Chapter 151B is similar." *Robert*, 731 F. Supp. 3d at 204 (*citing Mekonnen*, 394 F. Supp. 3d at 157). Thus, "[t]he requirement that the employee have a bona fide religious belief is an essential element of" a religious discrimination claim under Title VII. *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*,

279 F.3d 49, 56 (1st Cir. 2002). "In order to satisfy this element, the plaintiff must demonstrate both that the belief or practice is religious and that it is sincerely held." *Id.*

Against this legal backdrop, the Complaint is fatally deficient. It fails to identify any religious belief or practice of Plaintiff *at all*, let alone "a *bona fide* religious practice [that] conflicts with an employment requirement and was the reason for the adverse employment action." *Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc.*, 673 F.3d 1, 8 (1st Cir. 2012). The absence of these allegations requires dismissal for failure to state a claim. *See Robert*, 731 F. Supp. 3d at 204 (dismissing Title VII and Chapter 151B religious discrimination claims arising from employer's COVID vaccination and testing policies where plaintiff only "broadly alleges that [the employer's] vaccination and testing requirements contravened his sincerely held religious beliefs but does not explain <u>what</u> religious belief he held or <u>how</u> that belief was sincere"); *Griffin*, 2023 WL 4685942, at *6 ("[A] plaintiff who claims exemption from an employment requirement for religious reasons must plead some modicum of plausible facts sufficient to create an inference that the conflict arises from some specific religious tenet or principle."). *See also Brown v. Children's Hosp. of Philadelphia*, No. CV 18-2363, 2018 WL 5884545, at *2 (E.D. Pa. Nov. 9, 2018), *aff'd*, 794 F. App'x 226 (3d Cir. 2020) (dismissing complaint for failure to state claim under Title VII; "Nowhere … does Plaintiff identify any particular religious belief that she held and/or that conflicted with Defendant's requirement that all employees receive a flu vaccination."); *Leake v. Raytheon Techs. Corp.*, No. CV-22-00436-TUC-RM, 2023 WL 2242857, at *5 (D. Ariz. Feb. 27, 2023), *aff'd*, No. 23-15320, 2024 WL 1854287 (9th Cir. Apr. 29, 2024), *cert. denied*, No. 24-169, (dismissal of Title VII religious discrimination claims warranted where, among other deficiencies, "Plaintiffs never alleged … what their religious beliefs were").

13

Accordingly, even if Plaintiff's religious discrimination claims were not barred, they are still subject to dismissal for failure to state a claim.

### D. Plaintiff's IIED Claim Fails as a Matter of Law.

Finally, in Count III, the Complaint purports to assert a common law tort claim for IIED. This claim must be dismissed for two independent reasons: first, it is precluded by the exclusivity provision of the WCA; and, second, the Complaint lacks any allegations even remotely suggesting that the denial of Plaintiff's religious exemption request or her consequent termination for non-compliance with the Vaccination Policy were the sort of "outrageous" or "extreme" conduct necessary to give rise to an actionable IIED claim under Massachusetts law.

#### i. Plaintiff's IIED Claim is Barred Under the WCA.

It is well-established that common law claims for negligent and intentional infliction of emotional distress allegedly suffered in the course of employment are precluded by the exclusivity provision of the WCA, G.L. c. 152, § 24. Here, Plaintiff's threadbare IIED claim relies entirely on the Complaint's allegations concerning her religious exemption request, the denial of that request, and the consequent termination of her employment. *See* Compl., ¶¶ 25-27 (merely incorporating preceding paragraphs of Complaint by reference and asserting no additional facts pertaining to IIED claim). It is thus clear that this purported claim seeks recovery in tort for alleged emotional injuries arising from Plaintiff's employment: on its face, Count III seeks recovery for emotional injuries allegedly suffered in connection with her employment. The claim is therefore precluded as a matter of law.

Pursuant to the exclusivity provision of the Act, G.L. c. 152, § 24, "[c]ompensation under the act is the exclusive remedy for injuries to an employee suffered in the course of employment, regardless of the wrongfulness of the employer's conduct … or the foreseeability of harm." *Estate*

14

of *Moulton v. Puopolo*, 467 Mass. 478, 482-83 (2014) (internal citations omitted). "[I]ntentional torts are covered by the workers' compensation act, even when they are committed by coemployees." *Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 565 (citation omitted). Moreover, "emotional distress arising out of employment [is] a personal injury under the [MWCA]," even where such distress arises out of the employer's willful conduct. *Foley v. Polaroid Corp.*, 381 Mass. 545, 550 (1980). *See also*, *e.g.*, *Catalano v. First Essex Sav. Bank*, 37 Mass. App. Ct. 377, 380-81 (1994) ("when events occurring at work are a significant contributing cause of emotional or mental disabilities, those injuries are compensable under the Act") (affirming dismissal of claim for negligent infliction of emotional distress as barred under the MWCA's exclusivity provision). "The exclusivity bar applies even where the allegedly injurious actions occur in the course of termination." *Hamilton v. Baystate Med. Educ. & Rsch. Found., Inc.*, 866 F. Supp. 51, 55 (D. Mass. 1994), *aff'd sub nom.* Hamilton v. Baystate Med. Educ., 66 F.3d 306 (1st Cir. 1995).

This body of law leaves no doubt that Plaintiff's IIED claim is precluded by the MWCA. *See Foley*, 381 Mass. at 550 (dismissing a claim by an employee against his employer for intentional infliction of emotional distress arising out of the employer's investigation into employee's alleged misconduct on the job); *Green v. Wyman–Gordon Co.*, 422 Mass. 551, 558–59 (1996) (holding that plaintiff's claims against her employer for intentional and negligent infliction of emotional distress due to sexual harassment at work were barred by MWCA); *Catalano,* 37 Mass. App. Ct. at 380-81 (negligent infliction of emotional distress claim was barred by MWCA); *Uwakwe v. Pelham Acad.*, 286 F. Supp. 3d 213, 227–28 (D. Mass. 2017) (in case asserting Title VII claims related to former employee's demotion and alleged constructive discharge, dismissing common law claim for "intentional/reckless infliction of emotional distress" and holding that "Defendants are correct that this claim is barred by the exclusivity provisions of

15

the MWCA"); *Hamilton*, 866 F. Supp. at 55-56 (dismissing IIED and negligent infliction of emotional distress claims as precluded under the MWCA).

Plaintiff's IIED claim must be dismissed as precluded under the exclusivity provision of the MWCA.

### ii.     The Complaint Fails to State an Actionable IIED Claim.

Even if Plaintiff's IIED claim were not barred under the MWCA—which it is—it would nonetheless be subject to dismissal on its merits. The Complaint contains no allegations to support this claim, but instead merely incorporates the preceding paragraphs of the Complaint (which themselves largely consist of vague and conclusory assertions of wrongdoing) by reference, and then parrots the elements of the cause of action. Compl., ¶¶ 25-27. The Complaint, simply put, lacks any facts even remotely suggest that Plaintiff experienced the sort of extreme conduct required to establish an entitlement to relief under an IIED theory of recovery.[5] Accordingly, the IIED claim fails as a matter of law.

The elements of the tort of IIED in Massachusetts are well-established—the SJC has adopted the test from Section 46 of the Restatement (Second) of Torts. *See Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976). To prevail on an IIED claim, a plaintiff must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, … (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,' … (3) that the actions of the defendant were the cause of the plaintiff's distress, … and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no

---

[5] Nor does the Complaint contain any facts describing the nature or extent of Plaintiff's alleged emotional distress.

reasonable man could be expected to endure it.'" *Agis*, 371 Mass. at 144-45 (internal citations omitted).

"The standard for making a claim of [IIED] is very high[,]" *Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 161 (1st Cir. 2017) (*quoting Polay v. McMahon*, 468 Mass. 379, 385 (2014)) (internal citation omitted), "especially as to the nature of the conduct." *Roe v. Lincoln-Sudbury Reg'l Sch. Dist.*, No. CV 18-10792-FDS, 2021 WL 1132256, at *43 (D. Mass. Mar. 24, 2021) (*citing Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996)). Under Massachusetts law, "[l]iability [for IIED] cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Polay*, 468 Mass. at 385 (internal citations and quotation marks omitted). Of particular relevance to this case, "[e]ven the fact that the defendants' conduct may turn out to be violative of the plaintiff ['s] civil rights does not, in and of itself, necessitate a finding that the conduct is sufficiently egregious to state a claim for [IIED]." *Roe*, 2021 WL 1132256, at *43 (*quoting Guckenberger v. Bos. Univ.*, 957 F. Supp. 306, 319 (D. Mass. 1997)) (first alteration added).

When measured against this legal backdrop, Plaintiff's IIED claim falls far short of the plausibility line. *Compare Richey v. Am. Auto. Ass'n, Inc.,* 380 Mass. 835, 839, (1980) (affirming summary judgment for employer on former employee's IIED claim in connection with termination of employment even where "[a] trier [of fact] could infer, despite the supervisors' attempts at self-justification, that in dismissing the plaintiff they made a bad, unjust, and unkind decision, and one that fell with particular force on the plaintiff"). Rather, this claim appears to be entirely predicated

17

upon Plaintiff's allegations that Defendant denied her a reasonable accommodation in alleged violation of Title VII and Chapter 151B. *See* Compl., ¶ 25. There are no other alleged facts to support this claim.

Simply put, the suggestion that an employer's implementation of a vaccination requirement in the middle of a global pandemic could somehow constitute the sort of extreme or outrageous conduct required to prevail on an IIED claim is meritless, as multiple courts have found in similar cases. *See Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 469 (M.D. Pa. 2022) (in case challenging employee's termination for non-compliance with COVID vaccine policy, dismissing state law IIED claim for failure to state a claim and explaining that "it is not extreme and outrageous for a health system to present employees with the choice of a jab, a swab, or their job"); *Platta v. Gray Media Grp., Inc.*, No. 1:23-CV-236-VMC-JKL, 2023 WL 11807236, at *7 (N.D. Ga. May 12, 2023), *report and recommendation adopted*, No. 1:23-CV-00236-VMC-JKL, 2023 WL 11807225 (N.D. Ga. Nov. 17, 2023) (granting motion to dismiss state law IIED claim premised on employer's denial of religious exemption from employer's COVID vaccine requirement; "As far as the Court can tell, every federal court that has addressed the viability of an IIED claim premised upon an employee's refusal to comply with his employer's COVID-19 vaccine policy has dismissed the claim because the underlying conduct is not sufficiently extreme or outrageous, and this is true even when the employee alleges that the policy impinges on his religious beliefs.") (citing cases).

Thus, even if Plaintiff's IIED claim were not precluded under the MWCA, the Complaint fails to state a claim.

## IV. Conclusion

For all of these reasons, Defendant respectfully requests that this Court grant its Motion to Dismiss and enter an order dismissing the Complaint in its entirety.

DATED: January 10, 2025                             Respectfully submitted,

*/s/ Michael E. Steinberg*
Kristin G. McGurn (BBO No. 559687)
kmcgurn@seyfarth.com
Dawn R. Solowey (BBO No. 567757)
dsolowey@seyfarth.com
Michael E. Steinberg (BBO No. 690997)
msteinberg@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Facsimile:    (617) 946-4801

Attorneys for

BRIGHAM AND WOMEN'S HOSPITAL

## **CERTIFICATE OF SERVICE**

     I hereby certify that on January 10, 2025, a copy of the foregoing document was filed electronically through the Court's ECF system.

*/s Michael E. Steinberg*
Michael E. Steinberg
